# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Tracking of<br>*(Identify the person to be tracked or describe<br>the object or property to be used for tracking)*<br>A black 2017 Chevrolet Impala, bearing Texas<br>registration HXL3454, VIN: 1G1ZE5ST6HF114101 | ) ) ) ) ) ) Case No. **17-M-144** |

## APPLICATION FOR A TRACKING WARRANT

I, a federal law enforcement officer or attorney for the government, have reason to believe that the person, property, or object described above has been and likely will continue to be involved in one or more violations of __21__ U.S.C. §§ __841 and 846__. Therefore, in furtherance of a criminal investigation, I request authority to install and use a tracking device or use the tracking capabilities of the property or object described above to determine location. The application is based on the facts set forth on the attached sheet.

☑ The person, property, or object is located in this district.

☐ The person, property, or object is not now located in this district, but will be at the time of execution.

☐ The activity in this district relates to domestic or international terrorism.

☐ Other:

The tracking will likely reveal these bases for the warrant under Fed. R. Crim. P. 41(c): *(check one or more)*

☑ evidence of a crime;

☐ property designed for use, intended for use, or used in committing a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☐ a person to be arrested or a person who is unlawfully restrained.

☐ I further request, for purposes of installing, maintaining or removing the tracking device, authority to enter the following vehicle or private property, or both:

☑ Delayed notice of ____ days (give exact ending date if more than 30 days: **March 20, 2018**) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Special Agent Luke Hepp, HIDTA
*Applicant's printed name and title*

Sworn to before me and signed in my presence.

Date: **Sept. 21, 2017**

*Judge's signature*

City and state: Milwaukee, Wisconsin

David E. Jones, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A TRACKING WARRANT

I, Luke Hepp, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for an initial tracking warrant under Federal Rule of Criminal Procedure 41 to authorize law enforcement to install and monitor an electronic tracking device to determine the location of a vehicle more particularly described as: a black 2017 **Chevrolet Impala**, bearing Texas registration HXL3454, VIN: 1G1ZE5ST6HF114101, (hereinafter "**Subject Vehicle B**").

2. I am a Special Agent with the Wisconsin Department of Justice, Division of Criminal Investigation ("DCI"), and have been a sworn law enforcement officer for more than 10 years. I am currently assigned to the Wisconsin High Intensity Drug Trafficking Area ("HIDTA") Heroin Initiative. HIDTA is composed of law enforcement officers from federal and state law enforcement agencies. Since, 2014 I have been deputized as a federal task force officer with the United States Department of Justice, Drug Enforcement Administration (DEA). As such, I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

3. During my career in law enforcement, I have investigated violations of federal narcotics laws and related violations, including federal firearms and money laundering offenses. I have had formal training and have participated in numerous complex narcotics trafficking investigations. Based on my training, experience, and participation in drug trafficking investigations and associated financial investigations involving large amounts of heroin, cocaine,

1

crack cocaine, marijuana and/or other controlled substances I know and have observed the following:

- a. I have utilized informants to provide information and evidence when investigating various criminal offenses. Through informant interviews, consensually recorded conversations, and extensive debriefings of individuals involved in criminal activity, I have learned about the manner in which criminal individuals and organizations function in Wisconsin as well as in other areas of the United States;

- b. I have relied upon informants to obtain controlled substances from dealers, and have made undercover purchases of controlled substances;

- c. I have experience conducting both physical and electronic surveillance of individuals engaged in illegal activity. I have participated in the execution of numerous search warrants where controlled substances, money, business records, stolen property, firearms, and records of the illegal activity were seized;

- d. I have experience with individuals who attempt to hide their illegal proceeds by the use of nominees to purchase assets; use of extensive cash purchases; use of cash payment of bills; use of safety deposit boxes; use of trusted associates to store bulk cash; and the use of legitimate businesses to report the illegal profits as legitimate business income;

- e. I am familiar with the language utilized over the telephone to discuss various criminal activities and know that the language is often limited, guarded and coded;

- f. I know that individuals involved in drug trafficking and individuals involved in illegal activity often use electronic equipment, cellular and land line telephones, and the internet to conduct their criminal operations;

- g. I know that criminals commonly have in their possession and at their residences and other locations where they exercise domain and control, business and financial records, cash, valuables, and records relating to assets.

- h. I have been assigned to court-authorized wiretaps and have been trained to operate the equipment utilized to conduct such operations;

- i. I know that drug traffickers often put their telephone in nominee names in order to distance themselves from telephones that are utilized to facilitate drug trafficking; and,

- j. I know that drug traffickers often use drug proceeds to purchase assets such as vehicles, property, and jewelry. I also know that drug traffickers often use nominees to purchase and or/title these assets in order to avoid scrutiny from law enforcement officials.

2

4. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

5. Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Sections 841 and 846 have been committed, are being committed, and will be committed by Torrence HARRIS and others not yet identified. There is also probable cause to believe that the location of the subject vehicle will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

**PROBABLE CAUSE**

6. This investigation was initiated in March of 2013. To date, case agents have determined that a group of individuals, both known and unknown, to include Torrence HARRIS and Terrance HAMLIN, are involved in a drug trafficking organization. This organization distributes large quantities of heroin in and around the Milwaukee, Wisconsin area. Case agents have developed a confidential source that provided information regarding the drug trafficking activities of HAMLIN. Between August 2015 and April 2017 CS-2 bought distribution quantities of heroin from HAMLIN.

7. Based upon phone records, surveillance, controlled drug purchases, and intercepted telephone communication, case agents have discovered that HAMLIN obtains heroin from

3

HARRIS. At this time HARRIS' source of supply has not yet been identified. The investigation has revealed that HARRIS utilizes multiple telephones and changes his telephone numbers frequently.

## INFORMATION OBTAINED FROM CS-2

8. In August, 2015 an associate contacted a cooperating source, hereinafter referred to as "CS-2[1]," wanting to introduce CS-2 to somebody who would be able to sell heroin to CS-2. Case agents advised CS-2 to meet with this heroin supplier and their mutual associate. CS-2 met the heroin supplier who was identified as "T-Bone." "T-Bone" provided a cellphone number of **(414) 745-2329 ("Target Telephone 1")**. Case agents showed CS-2 a booking photograph of Terrance D. HAMLIN (B/M, DOB: 01-06-66), and CS-2 positively identified HAMLIN as the heroin supplier that was introduced to CS-2 as "T-Bone." CS-2 has since conducted nine controlled purchases of heroin from HAMLIN.

## WIRETAP OF TARGET TELEPHONES

9. The investigation to date has included traditional law enforcement methods, including, but not limited to, interviews with confidential sources; the gathering and analysis of information from other law enforcement agencies; the gathering and analysis of documentary

---

[1] Case agents believe the information provided by CS-2 to be truthful and reliable. CS-2 has been providing reliable information to the Drug Enforcement Administration and other law enforcement agencies since September 2013. Specifically, CS-2 conducted multiple controlled purchases of heroin, cocaine, and marijuana from individuals. CS-2's information has led to the issuance of several search warrants in the Milwaukee, Wisconsin area. CS-2 has provided information about the membership, structure, and customs of a violent street gang operating in the Milwaukee area against CS-2's own penal interest. CS-2 has conducted several consensually-recorded conversations with drug dealers and street gang members, both in person and on the telephone. CS-2's information has been corroborated by other confidential sources, information obtained from various public databases, physical surveillance, and through controlled drug purchases and consensually-recorded conversations and phone calls. CS-2's information has never been found to be false or misleading. I have learned of no instances where the information provided by CS-2 has been false or misleading. CS-2 has convictions for Theft, Burglary, Operating While Intoxicated and narcotic violations. CS-2 is cooperating with law enforcement in an attempt to obtain consideration in a narcotics case. For these reasons, I consider CS-2 to be reliable.

evidence; the analysis of pen register, trap and trace, and telephone toll data; physical surveillance; garbage searches; and the controlled purchases of narcotics.

10. On March 30, 2017, the Honorable J.P. Stadtmueller, United States District Judge for the Eastern District of Wisconsin, authorized the initial interception of wire and electronic communications over the cellular telephone assigned telephone number (414) 754-2329, and Mobile Station Identification Number ("MSID") 000004145176751 and Electronic Serial Number (ESN) 270113184302751982, subscribed to "TBONES AUTOR & MUSIC SALES" at 6491 N. 53rd Street, Milwaukee, WI, and primarily used by Terrance HAMLIN, and operated on the network of Sprint (hereinafter referred to as Target Telephone #1). During the initial interception period, Terrance HAMLIN used phone calls and text messages to and from Target Telephone #1 to coordinate drug deals with multiple drug customers and to communicate with his suspected source of supply of heroin, Torrence HARRIS.

11. On April 13, 2017, CS-2 conducted a controlled purchase of two ounces of heroin from HAMLIN. At 12:32 p.m., CS-2 placed a recorded and monitored call to HAMLIN at Target Telephone #1 and requested to purchase two ounces of heroin. At 1:11 p.m., case agents intercepted a telephone call from HAMLIN to (904) 654-6052 (hereinafter referred to as "Target Telephone #3"), a telephone number known to be used by HARRIS. HAMLIN stated, "One shoe," which case agents understood to be a request for a quantity of narcotics. HARRIS replied, "Come to the Box." Based on previously-intercepted telephone calls and physical surveillance, case agents understood this to mean HARRIS directed HAMLIN to the Skybox Sports Bar located at 2213 N. Dr. Martin Luther King Drive, Milwaukee, WI. HAMLIN advised he was on his way. Case agents established positions of surveillance in the area of the Skybox Sports Bar.

5

12. At 1:43 p.m., case agents intercepted a telephone call from HAMLIN to HARRIS. HAMLIN stated, "Yeah, I'm outside." HARRIS replied, "Alright." At approximately 1:46 p.m., case agents observed the HAMLIN in HAMLIN's vehicle as it arrived in the area of the Skybox Sports Bar. At 1:57 p.m., case agents intercepted a telephone call from HARRIS to HAMLIN. HARRIS advised, "I'm coming down on another, you know, couple more minutes. I had to, uh, [unintelligible] from the shower when you called. I had to [unintelligible] yet. Here I come."

13. At approximately 2:03 p.m., case agents observed HARRIS' 2015 red Chevrolet Impala bearing Wisconsin registration 367-ZDB, arrive in the area. At approximately 2:14 p.m., case agents observed HARRIS exit his vehicle and enter HAMLIN's vehicle. A short time later HARRIS exited HAMLIN's vehicle, re-entered his red Chevrolet Impala, and departed the area. Based upon their training, experience, and familiarity with the investigation, case agents believe HARRIS supplied the requested narcotics to HAMLIN at that time. Case agents then followed HAMLIN where he met with CS-2 at which time the CS-2 conducted a controlled purchase of two ounces of heroin from HAMLIN. The suspected heroin later tested positive for the presence of heroin and weighed a total of 50.5 grams with the original packaging material. A review of Wisconsin Department of Transportation records reveal that this license plate number lists to Torrence HARRIS at 8227 W. Appleton Avenue #4, Milwaukee, WI 53218.

14. On April 28, 2017, Judge Stadtmueller authorized the continued monitoring of Target Telephone #1 and the initial of Target Telephone #3, primarily used by HARRIS. During this interception period, HAMLIN used phone calls and text messages to and from Target Telephone #1 to coordinate drug deals with multiple drug customers and to communicate with HARRIS. HARRIS used phone calls and text messages to and from Target Telephone #3 to coordinate drug deals with multiple drug customers. Throughout this course of the interception

case agents learned HARRIS obtained additional telephones, (904) 738-3204 (Target Telephone #5) and (262) 307-6087 (Target Telephone #7).

15. On May 31, 2017, Judge Stadtmueller authorized the continued interception of wire and electronic communications of Target Telephone #1, Telephone #3, Target Telephone #5, and Target Telephone #7. During this interception period, HAMLIN used phone calls and text messages to and from Target Telephone #1 to coordinate drug deals with multiple drug customers and to communicate with HARRIS. HARRIS used phone calls and text messages to and from Target Telephones #3, #5, and #7 to coordinate drug deals with multiple drug customers. Throughout this period of interception case agents discovered HARRIS stopped using his aforementioned telephone numbers and began to use (773) 398-0112 (Target Telephone #12) and (262) 289-7235 (Target Telephone #13).

16. On July 7, 2017, Judge Stadtmueller authorized the initial interception of wire and electronic communications over Target Telephone #12 and Target Telephone #13, both primarily used by HARRIS. This Order expired on August 7, 2017.

17. On July 13, 2017, at 2:59 p.m., HARRIS, at Target Telephone #13, received a call from an Unknown Male (UM) using (414) 499-7605. The UM asked, "Shit, you gonna be around? I need to holla at you 'bout some shit." HARRIS replied, "Alright, at 5 o'clock." The UM said, "Say no mo.' That's cool." HARRIS said, "5-5:30, I'll call you." At 5:48 p.m., HARRIS, using Target Telephone #13, called UM at (414) 499-7605. HARRIS said, "I'm at the car wash on 30th and Burleigh." The UM stated, "Okay, you can pull up there?" HARRIS answered, "Yeah." The UM replied, "I'm one west." HARRIS acknowledged. At 6:09 p.m., the UM, using (414) 499-7605, called HARRIS at Target Telephone #13. HARRIS asked, "You outside?" The UM responded, "You said on 38th?" HARRIS replied, "No, 30th." The UM stated, "Okay, okay. I'm

7

coming down, I'll be there in two minutes." HARRIS acknowledged. Based on their training, experience, and familiarity with the investigation, case agents believe the UM asked to meet with HARRIS to obtain a quantity of narcotics ("I need to holla at you 'bout some shit."). HARRIS instructed the UM to meet him at the car wash located on N. 30th Street and W. Burleigh Road ("I'm at the car wash on 30th and Burleigh."). Case agents are aware Gifted Hands Car Wash is located at 3002 W. Burleigh Road, Milwaukee, WI.

18. Case agents established surveillance in the area of Gifted Hands Car Was and, at approximately 6:12 p.m., observed a silver Toyota Corolla bearing Wisconsin registration 439-NBG enter the rear lot of the car wash. Case agents observed HARRIS walk from the interior of the car wash and meet with the driver at the driver's side window of the Toyota Corolla. HARRIS walked to a blue Chrysler 300 parked in the lot and bearing Wisconsin registration 677-XYZ. HARRIS met with an individual in this vehicle for a short period then returned to the individual in the Toyota Corolla. At approximately 6:24 p.m., case agents observed HARRIS enter the car wash at which time the Toyota Corolla exited the parking lot and departed the area. At approximately 6:35 p.m., case agents observed HARRIS exit the car wash driving his Chevrolet Impala bearing Wisconsin registration 367-ZDB and depart the area. Based upon their training, experience, and familiarity with the investigation, case agents believe the operator of the Toyota Corolla met with HARRIS for the purposes of obtaining narcotics.

19. On July 28, 2017, TFO Luke Hepp applied for and received a federal Tracking Warrant from United States Magistrate Judge Nancy Joseph. This warrant authorized the installation of a tracking device on a red 2015 Chevrolet Impala, VIN# 2G1155SL7F9192311, bearing Wisconsin Registration 367-ZDB **(Subject Vehicle A)** operated by HARRIS. At the time the tracking device was installed, HARRIS was operating **Subject Vehicle A** and case agents

8

observed HARRIS conduct narcotics transactions that was verified through intercepted wire and electronic communications. Throughout the duration of the tracking warrant, however, HARRIS stopped operating **Subject Vehicle A.**

20. On August 4, 2017, Judge Stadtmueller authorized the continued interception of wire and electronic communications of Target Telephone #12 and Target Telephone #13. During this interception period, HARRIS used phone calls and text messages to and from Target Telephone #13 to coordinate drug deals with multiple narcotics customers.

21. On August 4, 2017, at 8:37 p.m., HARRIS, on Target Telephone #12, received a call from an Unidentified MALE (UM) using (312) 497-8324. The UM stated, "Li'l dawg trying to bust a 7th street." HARRIS stated, "I'll call you right back." Based upon their training, experience, and familiarity with the investigation, case agents believe the UM attempted to purchase seven grams of narcotics from HARRIS ("bust a 7th street").

22. On August 7, 2017, at 2:37 p.m., HARRIS, on Target Telephone #12, received a call from the UM using (312) 497-8324. The UM asked, "You at the shop." HARRIS replied, "No, I'm downtown off of Ogden and Van Buren, I was coming. [U/I] you soon as I leave. You there now?" The UM stated, "Naw, I'm on this mothafucking scooter. I done left from down. I'm up here in Wauwatosa, now. I'm finna slide by the shop." HARRIS said, "Oh I'm down, I'm headed there, but I gotta stop by the Box first." The UM acknowledged and HARRIS said, "Meet me right there, then you can do whatever you gotta do, right there." The UM asked, "Yeah, at the shop?" HARRIS corrected the UM, "No down. Down the street." The UM acknowledged.

23. At 3:02 p.m., HARRIS, on Target Telephone #12, received a call from the UM using (312) 497-8324. HARRIS asked, "You at the front door?" The UM replied, "No I'm on

9

North Avenue coming down. Going up rather, towards the shop. Where you at right now?" HARRIS reminded the UM, "Told you I was at the Box." UM confirmed, "At the Box? . . . I don't know what part you talking about though." HARRIS stated, "Playmakers, Playmakers." The UM responded, "Oh right there, right there, okay. I'm on this motherfucking scooter god damnit. You ain't coming out no time soon?" HARRIS replied, "I'm finna come up to the shop now." The UM said, "Okay, I'mma stop by the shop god damnit. This tag's bogus as a motherfucker on this motherfucker." HARRIS acknowledged.

24. Based upon their training, experience, and familiarity with the investigation, case agents believe HARRIS and the UM attempted to meet to complete a drug transaction. Case agents are aware that HARRIS refers to the Skybox Sports Bar located at 2213 N. Doctor Martin Luther King Drive, Milwaukee, WI as "the Box," and that he frequently conducts narcotics transactions across the street from it. Case agents are also aware that HARRIS refers to Kings and Queens Full Service Salon located at 3716 W. North Avenue, Milwaukee, WI as "the shop," and that he frequently conducts narcotics transactions in and around it. Therefore, case agents believe HARRIS initially directed the UM to the area of Skybox Sports Bar to conduct a narcotics transaction, but eventually changed the meeting location to Kings and Queens Full Service Salon.

25. On August 7, 2017, at 6:58 p.m., HARRIS, at Target Telephone #12, received a call from J.S. using (414) 366-9174. J.S. advised, "They said it was eight, it was an eight, big bro." HARRIS stated, "A'ight." Based upon their training, experience, and familiarity with the investigation, case agents believe J.S. provided HARRIS' narcotics to a trusted customer and narcotics tester. The person consumed the narcotics, and rated the narcotics an eight ("it was an eight, big bro") on a scale of one through ten.

10

26. Case agents discovered that activity on Target Telephone #12 tapered off significantly on August 8, 2017, leading case agents to believe HARRIS ceased using Target Telephone #12 and obtained a new telephone. Case agents have observed this pattern throughout the investigation. Through telephone toll analysis, case agents discovered that many of the frequent callers to HARRIS at Target Telephone #12 were now in contact with (773) 383-9596 (Target Telephone #14). Activity on Target Telephone #14 commenced at 3:13 p.m. on August 7, 2017. Between August 8, 2017 and August 22, 2017, Target Telephone #14 has been in contact with 97 numbers, 69 of which (71%) were also in contact with Target Telephone #12. Therefore, case agents believe HARRIS now utilizes Target Telephone #14.

27. On August 9, 2017, at 11:01 a.m., HARRIS, on Target Telephone #13, received a call from Terrance HAMLIN using (414) 745-2329. HARRIS stated, "Bone, down here at the Box. Come on." HAMLIN replied, "Oh, okay. Two gray shoes." HARRIS stated, "Come on, man." At 11:33 a.m., HARRIS, on Target Telephone #13, received a call from HAMLIN using (414) 745-2329. HARRIS advised, "Go in Playmaker's parking lot." HAMLIN stated, "Huh?" HARRIS repeated himself, "Go in Playmaker's parking lot." HAMLIN replied, "I'm already here." HARRIS stated "Alright."

29. Through their training, experience, familiarity with this investigation, and previously intercepted communications, case agents have determined that the term "gray shoes" is coded language used to refer to a quantity of heroin, possibly one ounce. Therefore, case agents believe HAMLIN was requesting to purchase 50 grams of heroin ("two gray shoes") from HARRIS. HARRIS directed HAMLIN to the parking lot of Playmakers Sport Center, 2230 N. Doctor Martin Luther King, Milwaukee, WI. Case agents are aware, through intercepted communications and surveillance, that HARRIS frequently conducts narcotics at this location.

11

30.     On August 16, 2017, at 2:06 p.m., HARRIS, using Target Telephone #13, called Clarence BOGAN at (414) 499-7605. BOGAN asked, "What's the word baby?" HARRIS replied, "Shit, waiting on you?" BOGAN stated, "Alright. Uh, I try to call, check on your number like uh, [U/I] some weak ass, so let me call this nigga see what going on dog." HARRIS confirmed that he obtained a new phone number, "Yeah, I got a new number." HARRIS continued, "I'm in the high number right now anyway out this way." BOGAN replied, "Okay I'm finna get dressed and I pull on you, one second bro." HARRIS acknowledged and instructed BOGAN to call him.

31.     At 7:15 p.m., HARRIS, at Target Telephone #13, received a call from BOGAN using (414) 499-7605. BOGAN stated, "Still [U/I]?" HARRIS replied, "No, I'm on the south side." BOGAN continued, "Okay, uh... [U/I] rap for a minute?" HARRIS instructed BOGAN, "Yeah, come on... come meet me... I'll be on 14th and Walnut." BOGAN acknowledged and stated, "I'm leaving off [U/I] right now." At 7:35 p.m., HARRIS, using Target Telephone #13, called BOGAN at (414) 499-7605. HARRIS stated, "I'm finna pull up in five minutes." BOGAN said, "Alright. Say no more." At 8:43 p.m., HARRIS, at Target Telephone #13, received a call from BOGAN using (414) 499-7605. BOGAN asked, "What it do, Bro?" HARRIS stated, "I'm waiting on you." BOGAN replied, "I'm [U/I] in 10 minutes." At 8:58 p.m., HARRIS, at Target Telephone #13, received a call from BOGAN using (414) 499-7605. BOGAN stated, "I'm here." HARRIS replied, "Give me about six, seven minutes. I'mma pull up too." BOGAN acknowledged. At 9:11 p.m., HARRIS, at Target Telephone #13, received a call from BOGAN using (414) 499-7605. BOGAN stated, "I can jump in with you too." HARRIS replied, "Yah, come on."

32.     Through their training, experience, familiarity with this investigation, and previous interceptions, case agents have identified Clarence BOGAN as a narcotics trafficker. Case agents

12

believe BOGAN and HARRIS were arranging a meeting so that BOGAN could purchase an undetermined amount of narcotics from HARRIS. Case agents further believe BOGAN and HARRIS have participated in numerous transactions together so that BOGAN no longer needs to prearrange a quantity of narcotics from HARRIS. HARRIS knows when he meets with BOGAN what type and quantity BOGAN will purchase.

33. On August 16, 2017, at 3:54 p.m., HARRIS, at Target Telephone #13, received a text message from an Unknown MALE (UM) using (414) 719-5569. This text message read, "Whats up young blood, this school on 12th I'm ready, i told you they went to a hundred in seventy street, so that address will be twenty in ten street. get right with me."

34. Based on their training, experience, and familiarity with the investigation, case agents believe the UM advised HARRIS that the price for 100 grams of heroin would be $70 per gram ("a hundred in seventy street"), but it would be $20 more per gram if HARRIS only wanted 10 grams ("so that address will be twenty in ten street").

35. Case agents discovered that outgoing activity on Target Telephone #13 tapered off significantly on approximately August 17, 2017, leading case agents to believe HARRIS obtained another new telephone. Through telephone toll analysis, case agents discovered that many of the most frequent callers to HARRIS at Target Telephone #13 were now in contact with (312) 931-5676 (Target Telephone #16). Activity on Target Telephone #16 commenced at 6:09 p.m. on August 11, 2017. Between August 11, 2017 and August 23, 2017, Target Telephone #16 was in contact with 28 numbers, 17 of which (61%) were also in contact with Target Telephone #13. Therefore, case agents assert HARRIS now utilizes Target Telephone #16 to communicate with his narcotics associates.

13

36. On September 1, 2017, Judge Stadtmueller authorized the initial interception of wire communications over Target Telephone #14 and wire and electronic communications over Target Telephone #16, both primarily used by HARRIS. This Order is set to expire on September 30, 2017.

37. On September 6, 2017, HARRIS sent a text message to an unidentified user ("UU") which read, "I Got bread 4 dude wya." The UU replied via text, "55th north." HARRIS and the UU agreed to meet later in the afternoon. Case agents know that "bread" is common coded language used to refer to money, and that "wya" is often used as shorthand in text messaging to mean "Where you at?" Therefore, case agents believe HARRIS advised he had drug-related proceeds for an unknown male, ("dude"), and asked where the UU was located. The UU advised the UU was near N. 55th Street and W. North Avenue. Later in the day, HARRIS advised he wanted to meet at the "shop," which case agents know to be Kings and Queens Full Service Salon. Using the same number, an unidentified female ("UF") called HARRIS, said she was pulling up, and asked if HARRIS was in a silver car. Based upon their training, experience, and familiarity with the investigation, case agents believe HARRIS delivered drug-related proceeds he owed to an unidentified male to the UF. The UF and HARRIS met at Kings and Queens Full Service Salon to conduct the transaction.

38. On September 6, 2017, law enforcement observed HARRIS exit the residence 7243 W. Marine Drive, Brown Deer and enter the driver side of a silver Nissan Maxima 4 door sedan displaying Texas (TX) registration of JGR2854. Law enforcement conducted a records check of the Texas registration which listed the vehicle as follows: 2017 Nissan Maxima, silver, 4 door sedan, VIN: 1N4AA6AP3HC404037; listing to PV Holding Corp. 17307 Pine Cut, Houston Texas 77032.

14

39. Case agents submitted an Administrative Subpoena to PV Holdings on September 5, 2017. On September 12, 2017, case agents received the information previously subpoenaed and learned the Nissan Maxima was rented by Torrence HARRIS.

40. On September 13, 2017, law enforcement conducted surveillance in the area of N. Dr. Martin Luther King (MLK) Drive and W. Garfield Avenue, Milwaukee, Wisconsin where, based on location data of Harris' telephone, case agents believed HARRIS to be. At approximately 3:20 p.m., law enforcement observed HARRIS walking outside of the building at 2200 N. Martin Luther King Drive and enter the driver's seat of a black Chevrolet Impala, bearing Texas (TX) registration HXL3454. Harris departed the area as the sole occupant of this vehicle. Law enforcement conducted a records check of the Texas registration, which listed the vehicle as follows: 2017 Chevrolet 4-door, black, VIN: 1G1ZE5ST6HF114101; listing to PV Holding Corp., 6520 Convair Road, El Paso, TX, 79925 (**Subject Vehicle B**). On September 13, 2017, case agents submitted an Administrative Subpoena to PV Holdings for rental information on **Subject Vehicle B**. Results have not been received yet.

41. On September 15, 2017, at approximately 5:45 p.m., law enforcement called PV Holding's law enforcement line and was advised that Subject Vehicle B had not yet been returned at that time.

42. On September 19, 2017, law enforcement conducted surveillance in the area of N. Dr. Martin Luther King Drive and W. Garfield Avenue, Milwaukee, Wisconsin where, based on location data of HARRIS' telephone, case agents believed HARRIS to be. At approximately 3:30 p.m., law enforcement again observed HARRIS enter **Subject Vehicle B** and depart the area.

43. The Drug Enforcement Administration is investigating Torrence HARRIS for violations of Title 21, United States Code, Sections 841 and 846. The investigation to date has included traditional law enforcement methods, including, but not limited to: interviews with a confidential source; information from other law enforcement officers, documentary evidence, telephone toll data, pen register and trap and trace data, controlled buys of drugs, recorded telephone calls with targets, physical surveillance, and the interception of wire and electronic communication to and from multiple cellular phones.

44. Based on CS information, physical surveillance, and controlled buys, I believe that Torrence HARRIS continues to use **Subject Vehicle B** in connection with his heroin trafficking activities. Based upon my own observations, I know that the subject vehicle is presently within the Eastern District of Wisconsin.

45. To to track the movement of the subject vehicle effectively and to decrease the chance of detection, I seek the use of a tracking device in or on the subject vehicle. Because Torrence HARRIS may sometimes park **Subject Vehicle B** on private property, it may be necessary to enter onto private property and/or move the subject vehicle to effect the installation, repair, replacement, and removal of the tracking device. To ensure the safety of the executing officer(s) and to avoid premature disclosure of the investigation, it is requested that the court authorize installation and removal of the tracking devices during both daytime and nighttime hours. Installation and removal of the tracking device would be extremely difficult to accomplish during daytime hours without being detected.

## AUTHORIZATION REQUEST

46. Based on the foregoing, I request that the Court issue the proposed eighth tracking warrant extension, pursuant to Federal Rule of Criminal Procedure 41, authorizing continued

periodic monitoring of the tracking device during both daytime and nighttime hours for a period of 45 days from the date of the Court's instant order. The tracking device may produce signals from inside private garages or other such locations not open to the public or visual surveillance.

47. It is further requested that in the event that the subject vehicle travels outside the territorial jurisdiction of the court, the order authorize the continued monitoring of the electronic tracking device in any jurisdiction within the United States, pursuant to 18 U.S.C. § 3117.

48. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 180 days after the collection authorized by the warrant has been completed. This delay is justified because there is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the owner or user of the subject vehicle would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). There is reasonable necessity for the use of the technique described above, for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).